FORET, Judge.
The only issue involved in this suit for personal injuries is that of quantum. As a result of injuries and damages sustained by Karla Sue Simmons and her husband, A.J. Simmons, Jr., when the top tier of ballpark bleachers in which they were seated collapsed, this lawsuit was filed. The trial court granted plaintiffs’ motion for summary judgment against Calcasieu Community Center Playground District # 2 and its insurer, Aetna Casualty & Surety Company, on the issue of liability. The question of liability having been decided, the only issue to be tried by the jury was quantum[1].
After trial, the jury returned a verdict in favor of plaintiff-appellee, A.J. Simmons, Jr., in the amount of $15,000 and in favor of Karla Sue Simmons in the amount of $100,000. Defendant-appellant, Aetna, appeals, assigning as error excessiveness of the award to Karla Simmons. There is no appeal of the judgment in favor of A.J. Simmons, and that judgment is now final.
Karla, the mother of three children, was seven months pregnant when this accident occurred. At the time the ballpark bleachers caved in, plaintiff was seated on the top tier, approximately ten feet from the ground. Upon the bleachers’ collapse, plaintiff struck the ground with her back and buttocks. Shortly thereafter, she was taken by ambulance to the Lake Charles Memorial Hospital and was unconscious for a time during this transport. Upon her arrival at the hospital, plaintiff was incoherent, confused, and in great pain. X-rays were taken and a CAT scan was performed shortly thereafter. The x-rays revealed that plaintiff sustained a concussion to the brain and a compression fracture in her back at T-12 and L-l. Plaintiff was then admitted to the hospital where she stayed for twelve days. She had been kept at strict bed rest for about a week and then placed in a back brace.
Plaintiff testified that during her hospital stay she was required to lay flat on her back for four days without moving. She could not feed herself nor go to the bathroom. She stated that her back pains were increased by her unborn child's movements and that these pains were worsened because she was instructed to keep still. The evidence also shows that she was in pain and was moaning and afraid that she would lose her baby. After her twelve-day hospital stay, plaintiff was placed in a hospital bed that was set up in her living room at her home. She stayed in this bed for three weeks and was unable to care for herself *777 and her family. Eventually, plaintiff gave birth at the Lake Charles Memorial Hospital. Because of her condition, the child was delivered by cesarean birth, which required plaintiff to remain in the hospital for six days. For three months following the birth, plaintiff was unable to care for her newborn child. At most, she could hold the baby for a few minutes at a time.
Dr. William Foster, a neurosurgeon in Lafayette who treated plaintiff, testified that when Karla was admitted to the hospital after the accident, she had contusions, lacerations and abrasions, and was complaining of headaches. He stated that she was admitted to the hospital, kept at strict bed rest for about a week, and then gradually allowed to ambulate with the aid of a brace, which was of minimal help since she was pregnant. Dr. Foster testified that plaintiff had a compression fracture of T-12 and L-l. He related that it was ideal to keep plaintiff immobilized even though this was not advantageous to her condition because she was pregnant. Dr. Foster stated that her pregnancy did prolong her symptomology for a longer period than usual and that she would have a functional disability in the range of 5% to 10% as a result of the accident.
Dr. James Austin, a gynecologist, also treated the plaintiff. He testified that he first saw plaintiff when she was brought to the hospital by the ambulance. He stated that she was very incoherent, very confused, and in a great deal of pain. He admitted that he and Dr. Moore[2] concurrently managed plaintiff’s pain medication. Dr. Austin testified that they were concerned about the possible ill effects of pain medication to the fetus and, as a result, prescribed minor medications for pain. He agreed that had plaintiff not been pregnant, they would have been able to give her more pain medication. Dr. Austin further stated that for several days plaintiff was not allowed to move and that during pregnancy movement is needed in order to minimize the risk of blood clots. Dr. Austin also stated that as a result of the accident a cesarean birth was performed since, among other factors, this method would do the least possible harm on the fractures in plaintiff’s back and would render plaintiffs labor less painful.
In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must look at the individual circumstances of the case before it. Only after a close analysis, if the facts reveal a clear abuse of discretion of the trier of fact, may the award of damages be altered. Plaintiff suffered a spinal fracture as a result of the accident. Additionally, she suffered a brain concussion, together with numerous bruises and abrasions about her upper body. Plaintiff was seven months pregnant at the time. As a result of her pregnancy, her intake of pain medication was restricted; she could not receive adequate support from her back brace; her pain was increased from fetal pressure and movement; and her period of healing was extended. She stayed in the hospital for a total of eighteen or nineteen days, the first week being strict bed rest. She was not able to give normal birth to her baby but, instead, had to undergo a cesarean section. She was not able to hold her newborn baby nor care for it to any substantial degree until approximately three months after its birth. Plaintiff was also left with a 5% to 10% permanent functional disability.
We find that the facts and circumstances of this case are unique. After a close analysis of the facts, we find that the jury award of $100,000 was adequately supported by the facts of this case. We therefore conclude that the jury did not commit error nor abuse its much discretion in making its award.
DECREE
For the foregoing reasons, the judgment appealed from is affirmed. Costs of this appeal are assessed against defendant, Aet-na Casualty & Surety Company.
AFFIRMED.

. The Calcasieu Community Center Playground District # 2 was dismissed as a party defendant by plaintiffs on the day of trial, thereby leaving Aetna Casualty & Surety Co. as the sole defendant in the proceeding.

. Dr. Moore was not called as a witness at trial.